**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MARK A. NELSON,**

      **Petitioner,**               **CRIM. NO. 2:06-CR-167**
                                  **CASE NO. 2:09-CV-394**
**v.**                              **JUDGE SARGUS**
                                  **MAGISTRATE JUDGE ABEL**

**UNITED STATES OF AMERICA,**

      **Respondent.**

**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner Mark A. Nelson, a federal prisoner, brings this action to vacate, set aside or correct sentence under 28 U.S.C. § 2255. This matter is before the Court on the motion to vacate, respondent's return of writ, and the exhibits of the parties.

This case involves petitioner Nelson's underlying criminal conviction on false acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6), is the result of his July 18, 2006, negotiated guilty plea. On February 2, 2007, the District Court sentenced Nelson to the maximum term of ten years imprisonment plus two years of supervised release. The United States Court of Appeals for the Sixth Circuit affirmed petitioner's sentence, and the United States Supreme Court denied the petition for a *writ of certiorari*. In this motion to vacate, set aside or correct sentence, Petitioner asserts that he was denied the effective assistance of counsel at trial and appeal and improperly sentenced. For the reasons that follow, the Magistrate Judge concludes that none of petitioner's claims provide a basis for habeas corpus relief and **RECOMMENDS** that this action be **DISMISSED**.

Petitioner's motion to withdraw his request for return of property, Doc. 54, is **GRANTED**.

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> Nelson pled guilty to false acquisition of a firearm in violation of 18 U.S.C. § 924(a)(2) pursuant to a plea agreement. The district court subsequently sentenced him to 120 months imprisonment, two years of supervised release, a $2,000 fine and a $100 special assessment. The district court applied an upward departure based on Chapter 5 of the Sentencing Guidelines resulting in a Guidelines calculation that was 33 months greater than the applicable Guidelines range for the offense of conviction.
>
> ***
>
> On February 16, 2005, Nelson attempted to purchase a firearm from Robert Cook and completed ATF Form 4473. Nelson was denied by the National Instant Criminal Background System because he was under indictment for a felony. Despite knowing that he was prohibited from purchasing and acquiring firearms, Cook transferred the gun to Nelson. Since 2005, Nelson has enlisted various individuals to straw purchase firearms on his behalf. He then sold the firearms at gun shows and out of his car. Undercover agents conducted several transactions with Nelson and purchased 26 firearms, 9 of which were traced to Cook as the original firearms dealer.
>
> On November 8, 2005, Nelson met with a confidential informant who told Nelson that he had prior felony convictions. Despite knowing that he was a convicted felon, the next day Nelson sold firearms to the informant. Nelson made three other sales to the informant in December 2005, and on December 28, 2005, Nelson made arrangements with the informant for the sale of $1,655 of firearms. When Nelson arrived at the agreed sale location, ATF agents approached him. During the transactions with the confidential informant, Nelson wore a bulletproof vest. At the last sale, ATF agents found a loaded, nine-millimeter, semi-automatic pistol on the floor of his car on the driver's side, a loaded, .38 caliber revolver on the front passenger's seat of his car and five more firearms in the car.
>
> On August 8, 2006, pursuant to a plea agreement, Nelson entered a plea of guilty to making a false statement in the acquisition of a

firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). Nelson was scheduled for sentencing on February 1, 2007. The plea agreement provided that the base offense level was at least 12 and that the government reserved the right to argue that the offense involved a machine gun which would result in a range 6 levels higher. It also provided that the offense involved over 200 firearms, the highest number contemplated by the sentencing guidelines, which resulted in a 10-level increase. The plea agreement also provided for a four-level increase because Nelson possessed and transferred firearms with reason to believe that they would be used or possessed in connection with another felony offense and a four-level increase for Nelson's aggravating role in the offense. Prior to the sentencing, the Probation Office completed a presentence investigation report ("PIR"). In the PIR, the Probation Office determined Nelson's total offense level was 33 and recommended a sentence of 120 months. This calculation was based on a base offense level of 18 rather than 12 because the STEN rifle recovered during the search of Nelson's residence was a machine gun. While the Guidelines calculated in the PIR provide for a sentence of 135 to 168 months, the Probation Office recommended a sentence of 120 months because 120 months is the statutory maximum for this offense of conviction. Nelson objected to the PIR on three grounds. At the initial sentencing hearing, Nelson withdrew two of his objections and the district court overruled the third objection. None of those objections is relevant to this appeal. The district court also questioned at the initial hearing whether relevant conduct for Nelson's offense of conviction would encompass his possession of a machine gun. Upon posing this question, the district court continued the hearing to allow the parties adequate opportunity to consider its question.

Prior to the second sentencing hearing, the district court gave notice to the parties that if the machine gun enhancement did not apply, it would consider an upward departure or variance based on U.S.S.G. § 5K2.2 for significant physical injury, § 5K2.6 for creating an unusually dangerous situation and/or § 5K2.14 for significantly endangering public safety and 18 U.S.C. §§ 3553(a)(1) and 3553(a)(2)(B) for the "number of guns involved in the offense of convictions, the danger to the community and the extent and scope of the crime." JA 21. At the second hearing, the Government filed its Exhibit 1 listing the firearms purchased and/or sold by Nelson and information on where those weapons were subsequently found. The Government's Exhibit 1 was admitted without objection and Nelson admitted the facts contained therein. JA 75-76.

3

At the hearing, the parties informed the district court that they agreed that the machine gun enhancement did not apply and the district court heard argument on the appropriateness of upward departures pursuant to §§ 5K2.2, 5K2.6 and 5K2.14. After hearing argument, the district court determined that the first two sections of Chapter 5 should not be applied but found that an upward departure pursuant to § 5K2.14 was appropriate because Nelson's crime significantly endangered public health and safety. In support of this conclusion, the district court explained that the Government's Exhibit 1:

[I]ndicates . . . the risk to the public was substantial and actual, not just a risk but there were actually people injured, and that all of this was something that was predictable given the method of sale, given the number of guns; and while I wouldn't base the enhancement on this alone, the bulletproof vest worn by the defendant is another indication that he even knew that the matters he was involved in created a danger to public safety.

JA 86-87. Based on Chapter 5 of the Guidelines, the district court departed by adding 6 points which resulted in an adjusted offense level of 33. The Guidelines imprisonment range for an offense level of 33 is 135 to 168 months. Since a statutory maximum applied, however, the range could not exceed the maximum of 120 months.

Noting that the Guidelines are advisory, the district court heard arguments from the parties regarding the factors listed in 18 U.S.C. § 3553(a) and discussed them in its ruling. The district court reviewed the nature and circumstances of the offense, noting that while there was a one-count charge, there were in excess of 200 guns, each of which would essentially represent an additional crime. JA 98. Further the district court noted that while the charged offense was completed when Nelson completed the purchase of the firearm, Nelson continued committing crimes when he sold the guns to others, including known felons.

The district court also reviewed Nelson's history and character noting that it "cut both ways." The district court found that Nelson should not be entitled to a pass for his service as a police officer but that he should not be more severely punished either. JA 98-99. The district court looked at the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and provide just punishment for the offense and found that the offense of conviction was most serious. JA 99. The court also looked at whether the sentence provided adequate deterrence to criminal conduct and

4

> noted that there needed to be deterrence with regard to further criminal conduct by Nelson and others. JA 99. The district court then considered protecting the public from further crimes by Nelson and found that when Nelson was not in custody, he presented a great risk to the public with regard to placing firearms in commerce. JA 99. The district court reviewed Nelson's need for education or vocational training, medical care or other correctional treatment, finding that the Bureau of Prisons can provide for those conditions. JA 99-100. The district court considered the types of sentences available and the range for the particular crime along with policy statements issued by the Sentencing Commission. JA 100. Finally, the court reviewed the need to avoid unwarranted sentencing disparities with defendants with similar records who have been found guilty of similar conduct, noting that the case seemed to turn on what sentence Cook, a co-defendant, was to receive from the court. JA 100-101.
>
> After discussing all of the § 3553(a) factors, the district court found that the aggravated nature of the offenses, the number of sales, the types of sales, the defendant's past, and the fact that Nelson wore a bulletproof vest (indicating that he knew of the dangerousness of the criminal conduct that he was engaged in) outweighed the mitigating factors of Nelson being a first-time offender, not having an extensive criminal past and not going to trial. JA 101. Accordingly, the district court sentenced Nelson to the statutory maximum of 120 months. JA 101.

*United States v. Nelson*, 296 Fed.Appx. 475 (6th Cir. 2008).  On February 23, 2009, the United States Supreme Court denied petitioner's petition for a writ of *certiorari*.  *Nelson v. United States*, 129 S.Ct. 1388 (2009).

On May 18, 2009, petitioner Nelson filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  He asserts as follows:

> 1.  Movant received ineffective assistance of counsel.
>
> 2.  The evidence was insufficient to support a conviction for a violation of 18 U.S.C. §922(a)(6).
>
> 3.  The District Court improperly denied Movant any credit for acceptance of responsibility as agreed upon by all parties in the plea agreement.

5

4.  The district court erred by improperly enhancing Movant's base offense level by 6-levels based on factors already taken into consideration by the United States Sentencing Commission.

5.  Movant was improperly enhanced 4 levels pursuant to 2K2.1(b)(5), firearms used in connection with other felony offenses.

6.  Movant was improperly enhanced 4 levels pursuant to 3B1.1(a), for leadership role in the offense.

It is the position of the respondent that petitioner's claims fail to provide a basis for federal habeas corpus relief.

### CLAIM ONE: INEFFECTIVE ASSISTANCE OF COUNSEL

In claim one, petitioner Nelson asserts that he was denied the effective assistance of counsel because his attorney failed to advise him of potential defenses to the offense charged, elements the required for a conviction, and his right to credit, under the United States Sentencing Guidelines, for acceptance of responsibility under his guilty plea.  Nelosn complains that his attorney performed in a constitutionally ineffective manner by permitting him to agree to the sentencing terms contained in his guilty plea agreement[1] and by failing to argue that the evidence was insufficient to sustain his

---

[1]  Pursuant to the terms of his guilty plea agreement, petitioner agreed in relevant part as follows:

[P]ursuant to U.S.S.G. 2K2.1 the following applies to this case:

a.  Pursuant to 2K2.1(a)(7), the offense level is at least 12.  The Parties do not agree and the United States reserves the right to argue that the offense involved a firearm described in 26 U.S.C. § 5845(a), a machine gun, resulting base offense level of 18.

b.  Pursuant to 2K2.1(b)(1), the offense involved 200 or more firearms, resulting in a 10-level increase in the offense level.

c.  Pursuant to 2K2.1(b)(5), defendant possessed and transferred firearms with reason to believe that it would be used or possessed in connection with another

conviction under 18 U.S.C. § 922(a)(6). According to Nelson, had his attorney advised that he might be sentenced to the maximum despite his guilty plea, he never would have pleaded guilty, but would have proceeded to trial. *See Petitioner's Reply*, Doc. 50. Further, he asserts that he was denied the effective assistance of counsel because his attorney failed to argue that imposition of the maximum sentence for his offense of conviction deprived him of the benefit of his acceptance of responsibility thereby constituting a breach of the plea agreement.

Respondent has submitted an affidavit from Attorney Mark C. Collins, defense counsel, in response which indicates in relevant part as follows:

> I went over all possible defenses regarding the Defendant's charge. I explained the elements needed for the United States Attorney's Office to go forward with a trial and a possible conviction. I met with both ATF Agents multiple times and went over the evidence against Mr. Nelson. I met with the Assistant U.S. Attorney, Doug Squires, who allowed me to review his file, and I also met with the undercover CPD Detective who the Defendant sold weapons to.
>
> The investigation in the case was thorough and complete. With regards to the Defendant's Agreement, every aspect of the Agreement

---

felony offense, resulting in a 4 level increase in the offense level.

The Parties agree that Defendant MARK ANDREW NELSON had an aggravating role in the instant offense pursuant to U.S.S.G. § 3B1.1(a) based upon facts known to the Parties at the time of this Agreement and that such enhancement applies to this case, resulting in a 4 level enhancement.

The United States Attorney for the Southern Distric of Ohio recommends that as of the time of the execution of this Agreement, Defendant MARK ANDREW NELSON has accepted responsibility for the offense to which he has agreed to plead guilty. If it appears that the defendant is likely to be at an offense level of 16 or greater and if he continues to accept responsibility through the time of sentencing, the United States will inform the Court pursuant to U.S.S.G. § 3E1.1(b) that the defendant has timely notified authorities of his intention to plead guilty.

*Guilty Plea Agreement*, Doc. No. 2.

7

was gone over and all issues were explained to the Defendant. With regarding to the accepting responsibility issue, this was argued both in the objections to the Probation Department's report, as well as at the time of sentencing. It was the Assistant U.S. Attorney's position, based on the belief of the ATF Agents, that he had not complied in his proffer and that no new evidence or any additional helpful information was obtained from Mr. Nelson and, therefore, there was no acceptance of responsibility.

***

In this case the evidence and facts were overwhelming towards supporting the enhancements. I also explained to Mr. Nelson that by signing the Plea Agreement he would not be charged with any future issues surrounding a possible weapon that was moved across the Canadian border to a terrorist cell. In fact, at Sentencing the District Court ruled in our favor with regards to the machine gun. However, after that hearing the District Court informed me that it was going to apply an upward departure based on Chapter 5 of the Sentencing Guidelines because it was determined that the offense significantly endangered the public's safety.

***

I did present evidence to the Defendant that would potentially prove each and every element in order to sustain a conviction. There were taped conversations incriminating the Defendant, there were person to person deals/contact with an undercover detective, as well as multiple documents that were signed by the Defendant.

***

I did, in fact, argue at Sentencing that the Defendant's conduct in his interviews and resolving the case through the Plea Agreement did, in fact, show the acceptance of responsibility. This was gone over in both the objections and at the hearing. The District Court went over each of the factors in detail at sentencing and found that the Defendant did not warrant the acceptance of responsibility reduction.

***

At two points in the sentencing, I argued the Guidelines took into account factors upon which the court based its upward departure, which meant there should not be an upward 6 level adjustment and that the Guidelines did, in fact, take that into account. Again, the District Court went over this detail and found that due to the severity of the crime and amount of weapons involved that the 6 level upward adjustment was warranted.

8

\*\*\*

> I did make arguments factually that indicated Robert Cook was, in fact, the leader and organizer of the conspiracy. This conspiracy could not have occurred without the participation of Mr. Cook. For that reason, I did object to the probation officer's report and at sentencing that a 4 level increase was inappropriate.

*Affidavit of Mark C. Collins*.

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner who is challenging the entry of his guilty plea on the basis of counsel ineffectiveness must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

> The second, or "prejudice" requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

Petitioner signed a guilty plea agreement outlining the terms of his guilty plea, the maximum sentence he faced and all of the rights he was waiving by entry of his guilty plea. Doc. 2. Pursuant to the terms of this plea agreement, he agreed to testify truthfully and provide a complete statement to authorities regarding all matters pertaining to the charges. *See id.* The parties agreed that, under U.S.S.G. § 2K2.1(a)(7) his offense level was at least 12 and the United States reserved the right to

argue that, due to involvement of a machine gun, the offense level was 18. *See id.* The parties

agreed that under U.S.S.G. § 2K2.1(b)(1), the offense involved 200 or more firearms, resulting in

a 10 level increase in the offense level; under to U.S.S.G. § 2K2.1(b)(5), Petitioner had reason to

believe the firearms would be used or possessed in connection with another felony offense, resulting

in a 4 level increase in the offense level; and under U.S.S.G. § 3B1.1(a), Petitioner's aggravating

role in the offense resulted in a 4 level increase in his recommended guideline sentence. *Id*.

Petitioner's guilty plea agreement further provided that, in the event Petitioner's offense level was

16 or greater and he continued to accept responsibility through the time of sentence, the United

States would inform the Court he had timely notified authorities of his intention to plead guilty

under U.S.S.G. §3 E1.1(b). Notably, petitioner acknowledged as follows:

> The defendant is aware that the Court has jurisdiction and authority
> to impose any sentence within the statutory maximum set forth for
> the offense to which the defendant pleads guilty. The defendant is
> aware that the Court has not yet determined a sentence. The
> defendant is further aware that any estimate of a probable sentencing
> range under the guidelines that the defendant may have received, or
> may receive in the future from his counsel, the United States, or the
> probation office is a prediction, not a promise and is not binding . . .
> . The United States makes no promise or representation concerning
> the sentence that the defendant will receive, and the defendant cannot
> withdraw a guilty plea based upon the actual sentence.

*Id*. If Nelson provided substantial assistance to the government, the government might file a motion

for downward departure. He agreed to forfeit firearms and cash involved in the offense charged.

*Id*.

In view of the plain language of Nelson's signed guilty plea agreement indicating that he

understood the District Court could impose any sentence within the statutory maximum, there was

no "breach" of the plea agreement, and petitioner cannot establish the ineffective assistance of

counsel under the test set forth in *Strickland* for failing to make this argument. Nelson acknowledged, at his guilty plea hearing, that he had been provided a copy of the charge and had read and discussed the charge with his attorney. *Guilty Plea Transcript*, at 5. He had advised his attorney everything he knew about the case. *Id.* at 8. His attorney had advised him of potential defenses. Petitioner was satisfied with counsel's advice and representation. *Id.* at 9. The District Court explicitly advised petitioner of the elements of the offense. Nelson at all times indicated that he understood. *Id.*

The District Court further advised Nelson that he faced up to ten years in prison. *Id.* at 10.

> COURT: Do you understand that if I accept your offer to plead guilty, I can impose the same penalties as though you pleaded not guilty, stood trial, and were convicted by a jury in this courtroom?
>
> DEFENDANT: Yes, your Honor.

*Id.* Nelson had discussed with his attorney how the sentencing guidelines might apply. He understood that the sentencing guidelines were only advisory and that the District Court had authority to impose a sentence that was greater or lesser than that called for by the sentencing guidelines. *Id.* at 11-12. The Court advised him of all of the rights he was waiving by entry of his guilty plea. Again, Nelson at all times indicated that he understood. He asked no questions. *Id.* at 12-13. The prosecutor reviewed the terms of the guilty plea agreement, including those agreements involving how specific terms of the United States Sentencing Guidelines would be applied. *Id.* at 13-16. Nelson agreed with those terms. *Id.* at 16. He denied being made any promises other than those set forth in the guilty plea agreement and denied being threatened into pleading guilty. *Id.*

Special Agent Beth Dallas summarized the facts of the case as follows:

> Beginning as early as January 2005, Mark Nelson enlisted individuals other than himself to include members of his immediate family, and

11

others, both known and unknown to this Court, to straw purchase firearms on his behalf. A straw purchase is when an individual acts as an intermediary and purchases firearms from a licensed firearms dealer on behalf of another in order to hide the true identity of the purchaser or possessor. Often, as in this case, the true purchaser is a prohibited individual and cannot himself lawfully obtain firearms.

In January 2005, ATF agents from the Columbus field office identified a firearms trafficking scheme originating with a Federal Firearms Licensee, or FFL, namely Robert L. Cook from Westerville, Ohio. Mr. Cook's registered place of business, 8170 Harlem Road, Westerville Ohio, is also his residence and is in the Southern District of Ohio.

Further investigation identified Mr. Cook transferring large numbers of firearms, in excess of 300, to Mark Nelson. These firearm transfers were facilitated by the completion of numerous over-the-counter firearms transaction records, commonly referred to as the ATF Form 4473, by Mr. Nelson's immediate family members and associates. The majority of these firearms transferred from Mr. Cook to Mr. Nelson during calendar year 2005. Mr. Nelson would sell these firearms at area gun shows and was transferring firearms to the criminal element.

In addition to enlisting others to purchase firearms on his behalf, Mark Nelson attempted to purchase a firearm from Robert Cook by completing ATF Form 4473 on February 16, 2005. Mr. Nelson was ultimately denied by the National Instant Criminal Background System on February 18, 2005. This denial was based on Mr. Nelson's having been indicted on December 6, 2004 for felonious assault, a felony of the second degree, in the Franklin County, Ohio Court of Common Pleas Case No. 04CR-7796. Mr. Nelson falsified the 4473 when he indicated on the form that he was not under indictment in any court for a crime punishable as a felony. However, Robert Cook, the FFL, continued to transfer firearms to Mark Nelson knowing that Mr. Nelson was prohibited from purchasing and acquiring firearms.
Mr. Nelson and Mr. Cook continued this firearms trafficking scheme throughout 2005 with profit as the principle objective.

Beginning in late October 2005 and continuing through late December 2005, ATF agents conducted several undercover contacts with Mark Nelson and purchased at least twenty-six firearms within the two-month time frame. Of the twenty-six firearms purchased,

nine of these firearms were traced to Robert Cook as the original firearms dealer and the relatives and known associates of Mark Nelson as the original purchasers of the firearms.

Also, during several undercover contacts with an ATF confidential informant, this individual indicated to Mr. Nelson that the informant was a convicted felon and could not pass a background check, referring to the NICS check. Mr. Nelson then instructed the confidential informant to enlist a friend or individual who could pass a background check to complete an ATF Form 4473 on the informant's behalf. Mr. Nelson provided the ATF confidential informant with Blank ATF Forms 4473 and offered instruction as to how the forms were to be completed.

In summary, Mr. Nelson participated in numerous federal firearms forms violations and continued this firearms trafficking scheme in order to profit from moving firearms to the illegal channels of trade to the illegal firearms market.

These forms violations occurred in the Southern District of Ohio.

*Id.*, a 19-20. Petitioner Nelson agreed with the truth of these facts. *Id.*, at 20.[2] He admitted his guilt. *Id.*, at 21. At sentencing, Nelson stated he had received and read a copy of the Presentence Investigation Report and had discussed its contents with his attorney. *Sentencing Transcript,* at 2-3.

In view of Nelson's statements, made under oath at the time of his guilty plea, that he had discussed the charges against him and any possible defenses with his attorney, petitioner's allegation now that his attorney did not provide such advice simply is unworthy of credit.

[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity.

*Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977). Similarly, petitioner's allegations here that he did

---

[2] Nelson denied giving instructions to police regarding how to fill out the blank forms; however, this fact was not relevant to any of the elements of the offense charged. *Id.*, at 20.

not know the elements of the offense charged or that he might not obtain the benefit of a reduction in his recommended guideline sentence for acceptance of responsibility and timely notifying authorities of his intention to plead guilty, or that the District Court had authority to impose a maximum term of ten years incarceration are belied by his signed guilty plea agreement, his guilty plea colloquy, and his own statements made at the guilty plea hearing.

Petitioner argues at length that his attorney improperly advised him to plead guilty under facts that were insufficient to establish the crime charged because co-defendant, James Robert Cook, a federal firearms licensee who obtained firearms on petitioner's behalf, knew Petitioner was person prohibited from purchasing firearms. *See Memorandum in Support*. This argument is not persuasive, and other courts to address the issue have rejected petitioner's argument:

> [N]otwithstanding the statute's reference to "such dealer" evidence concerning the dealer's knowledge or state of mind is irrelevant in section 922(a)(6) cases, because the statute is concerned not with the dealer, but rather with the preservation of records for the ATF and the protection of the public. In other words, since the statute ultimately is intended to aid federal law enforcement officials who someday will review the records, whether or not the false statement deceived the specific dealer with whom the defendant dealt is of no moment. This reasoning makes even more sense when we consider certain hypotheticals. For example, imagine a situation where the evidence unquestionably shows that the defendant and the dealer conspired to record a false statement and obtain guns for the defendant. In this situation, it would be difficult if not impossible for the Government to prove that the defendant made the false statement with an intent to deceive, or that the statement was likely to deceive, this dealer. But did Congress really mean to say that a defendant cannot, as a practical matter, be guilty of a section 922(a)(6) violation under these circumstances? We are not aware of any case law or legislative history squarely stating that the answer to this question should be yes.
>
> To reiterate, the statute is not concerned with protecting the dealer-if it was, then evidence that the dealer was not or could not have been deceived might be highly probative in determining whether a violation occurred. But. . . section 922(a)(6) was designed to serve a

14

broader law enforcement purpose. The Supreme Court discussed this purpose at some length in *Huddleston v. United States,* 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974) . . . .

. . . When Congress enacted [section 922] it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest. Congress determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States. The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background or incompetency."

[T]he Gun Control Act of 1968[is] thus aimed at restricting public access to firearms. Commerce in firearms is channeled through federally licensed . . . dealers in an attempt to halt mail-order and interstate consumer traffic in these weapons. The principal agent of federal enforcement is the dealer . . . .

Section 922(a)(6), the provision under which petitioner was convicted, was enacted as a means of providing adequate and truthful information about firearms transactions. Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping "these lethal weapons out of the hands of criminals . . . and other persons whose possession of them is too high a price in danger to us all to allow." *Thus, any false statement with respect to the eligibility of a person to obtain a firearm from a licensed dealer was made subject to criminal penalty.*

*Id.* at 824-25, 94 S.Ct. at 1269 (emphasis added) (citations to Senate Report, the Congressional Record and other sources omitted).

If we accept that Congress was concerned with protecting the public from felons who obtain guns through impermissible means, then it should be enough that the defendant made a false statement with the intent of deceiving or in a manner likely to deceive a "reasonable dealer." More to the point, evidence that the specific dealer with whom the defendant dealt was colluding with the defendant or otherwise could not have been deceived should be irrelevant (except, perhaps, to the extent that it sheds light on how a reasonable dealer would view the misrepresentation).

*United States v. Falcon*, 957 F.Supp. 1572, 1580-82 (S.D. Fla. 1997), citing *United States v. Raham*,

83 F.3d 89, 92-93 (4th Cir. 1996); *United States v. Haynes*, 16 F.3d 29, 32-33 (2nd Cir. 1994)("The fact that the seller may not have actually been deceived is of no consequence" upheld as appropriate jury instruction); *United States v.Elias,* 937 F.2d 1514 (11th Cir. 1991) .

Indeed, the record reflects overwhelming evidence of petitioner Nelson's guilt.   *See PreSentence Investigation Report*, at ¶¶19-74.   By entry of his guilty plea, the government agreed not to pursue additional charges relating to a possible weapon that had been moved across the Canadian border to a terrorist cell, and left open the possibility of filing a motion for downward departure from the sentencing guidelines upon petitioner's substantial assistance. It was through no fault of counsel that the prosecutor chose not to file such a motion in this case:

> There is no 5K filed in this case because the level of cooperation as seen by Mr. Nelson was not corroborated, nor was it completely forthright, nor was it completely complete.  He volunteered no helpful information.  He had to be asked about information, but volunteered no helpful information.

*Sentencing Transcript,* at 26.  By virtue of his guilty plea, Nelson obtained reductions in his recommended sentence for acceptance of responsibility and timely notifying the authorities of his intention to plead guilty.  As noted by the District Court at sentencing, although Nelson pleaded guilty to a one-count indictment, each of his sales could have constituted separate offenses.  Petitioner reduced his potential prison exposure by entry of his guilty plea.  In short, the record fails to support Petitioner's claim that, but for the inadequate performance of counsel, he would not have pleaded guilty, but would have proceeded to trial.

The record likewise fails to reflect that petitioner was denied the effective assistance of counsel at sentencing. Under *Strickland*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious

16

> that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. at 687; *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987).

In fact, defense counsel argued against increases in petitioner's recommended guideline sentence under "U.S.S.G. § 5K2.2 for significant physical injury, § 5K2.6 for creating an unusually dangerous situation . . . § 5K2.14 for significantly endangering public safety and 18 U.S.C. §§ 3553(a)(1) and 3553(a)(2)(B) for the 'number of guns involved in the offense of convictions, the danger to the community and the extent and scope of the crime.' JA 21." *United States v. Nelson*, 296 Fed.Appx. at 477. *See Sentencing Transcript,* February 6, 2007; *PreSentence Investigation Report*. The United States Court of Appeals for the Sixth Circuit affirmed Petitioner's sentence on appeal:

> [T]he district court heard argument on the appropriateness of upward departures pursuant to §§ 5K2.2, 5K2.6 and 5K2.14. After hearing argument, the district court determined that the first two sections of Chapter 5 should not be applied but found that an upward departure pursuant to § 5K2.14 was appropriate because Nelson's crime significantly endangered public health and safety. In support of this conclusion, the district court explained that the Government's Exhibit 1:

> [I]ndicates . . . the risk to the public was substantial and actual, not just a risk but there were actually people injured, and that all of this was something that was predictable given the method of sale, given the number of guns; and while I wouldn't base the enhancement on this alone, the bulletproof vest worn by the defendant is another indication that he even knew that the matters he was involved in created a danger to public safety.

> JA 86-87. Based on Chapter 5 of the Guidelines, the district court

17

departed by adding 6 points which resulted in an adjusted offense level of 33. The Guidelines imprisonment range for an offense level of 33 is 135 to 168 months. Since a statutory maximum applied, however, the range could not exceed the maximum of 120 months.

Noting that the Guidelines are advisory, the district court heard arguments from the parties regarding the factors listed in 18 U.S.C. § 3553(a) and discussed them in its ruling. The district court reviewed the nature and circumstances of the offense, noting that while there was a one-count charge, there were in excess of 200 guns, each of which would essentially represent an additional crime. JA 98. Further the district court noted that while the charged offense was completed when Nelson completed the purchase of the firearm, Nelson continued committing crimes when he sold the guns to others, including known felons.

The district court also reviewed Nelson's history and character noting that it "cut both ways." The district court found that Nelson should not be entitled to a pass for his service as a police officer but that he should not be more severely punished either. JA 98-99. The district court looked at the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and provide just punishment for the offense and found that the offense of conviction was most serious. JA 99. The court also looked at whether the sentence provided adequate deterrence to criminal conduct and noted that there needed to be deterrence with regard to further criminal conduct by Nelson and others. JA 99. The district court then considered protecting the public from further crimes by Nelson and found that when Nelson was not in custody, he presented a great risk to the public with regard to placing firearms in commerce. JA 99. The district court reviewed Nelson's need for education or vocational training, medical care or other correctional treatment, finding that the Bureau of Prisons can provide for those conditions. JA 99-100. The district court considered the types of sentences available and the range for the particular crime along with policy statements issued by the Sentencing Commission. JA 100. Finally, the court reviewed the need to avoid unwarranted sentencing disparities with defendants with similar records who have been found guilty of similar conduct, noting that the case seemed to turn on what sentence Cook, a co-defendant, was to receive from the court. JA 100-101.

After discussing all of the § 3553(a) factors, the district court found that the aggravated nature of the offenses, the number of sales, the types of sales, the defendant's past, and the fact that Nelson wore a

18

bulletproof vest (indicating that he knew of the dangerousness of the criminal conduct that he was engaged in) outweighed the mitigating factors of Nelson being a first-time offender, not having an extensive criminal past and not going to trial. JA 101. Accordingly, the district court sentenced Nelson to the statutory maximum of 120 months. JA 101.

\*\*\*

## A. Procedural Challenges

The district court determined that Nelson's applicable Guidelines range for the one-count indictment was 70 to 87 months of imprisonment, but concluded that a departure pursuant to § 5K2.14 applied, taking the range to 135 to 168 months.[FN1] The district court noted the statutory maximum of 120 months would supercede the higher calculated range. After it calculated the Guidelines range, the district court discussed the § 3553(a) factors and announced a sentence of 120 months, determining that the mitigating factors were outweighed.

Nelson's procedural objection is that the Guidelines calculation that the district court employed was improper. Specifically, Nelson objects to the enhancement of his sentence pursuant to U.S.S.G. § 5K2.14 arguing that the upward departure amounts to improper double counting because the danger to public safety alleged in the case was already accounted for in the Guidelines provisions related to the offense of conviction.

The Guidelines provisions related to the offense of conviction provide for punishment for making a false statement in the acquisition of a firearm and provide for increases in levels for the total number of firearms involved in the offense and for possession of firearms that are used in connection with other felony offenses by the defendant or that are transferred or possessed with knowledge that they will be used in connection with a felony offense. Both of these increases were applied without objection resulting in an initial range under the Guidelines of 70-87 months, which the district court properly acknowledged.

Section 5K2.14, however, provides that a sentencing court may increase the range "to reflect the nature and circumstances of the offense." The departure is appropriate if "national security, public

health, or safety was significantly endangered." *Id.* The district court distinguished the offense of conviction, which had to do with obtaining firearms Nelson was not permitted to possess based on false information given by Nelson, and Nelson's additional conduct. The district court noted that more than 200 firearms were involved in the offense and found that although Nelson completed the charged offense when he received the firearms, he continued beyond that offense with the sale of weapons to the confidential informant whom Nelson knew to be a convicted felon. The Government's Exhibit 1 and Nelson wearing a bulletproof vest during the transaction with the confidential informant, moreover, provide the basis for the departure pursuant to § 5K2.14 as these facts demonstrate "the risk to the public was substantial and actual" and that such risk/danger was "predictable." Additionally, while the district court did not specifically recite these facts, the record before the district court reflects that Nelson conducted multiple transactions with the informant and at the last transaction Nelson carried loaded firearms in his car. These are legitimate justifications for applying the departure.[FN2] Accordingly, we find that the district court did not abuse its discretion in departing upward under § 5K2.14.

FN2. Under U.S.S.G. § 5K2.0(a)(3), "[a] departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense." Thus, while the district court departed for reasons separate from the considerations of the Guidelines provisions related to the offense of conviction, a further consideration of factors used to determine the Guidelines was appropriate in the departure context if the case fell within § 5K2.0(a)(3). Nelson's double-counting argument both mischaracterizes the basis for departure here and wrongly assumes the impermissibility of double counting in this context.

Nelson also argues that the district court did not consider certain § 3553(a) factors when it sentenced him. While he classifies this argument as a "substantive" challenge, it is more correctly classified as "procedural" because Nelson is arguing that the district court did not follow proper procedure when it failed to consider one of the factors. Specifically, Nelson argues that the court failed to consider his status as a police officer as a mitigating factor as such status subjects him to a greater risk of harm while incarcerated. The district

court specifically considered Nelson's status as a former police officer and found that it "cut both ways." JA 98. The district court is not required to consider whether he is at a greater risk for harm while incarcerated and there is no evidence in the record that Nelson would be at any greater risk of any supposed danger if he is incarcerated 70 months or 120 months. Moreover, defense counsel did not raise this issue at the hearing. It is not incumbent on the district court to raise every conceivably relevant issue on its own initiative. *See Gall,* 128 S.Ct. at 599.

We find that the district court committed no procedural errors. As explained *supra,* the district court properly calculated the Guidelines range and applied the departure. It also allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered the § 3553(a) factors, acknowledged the advisory nature of the Guidelines, did not select erroneous facts and thoroughly documented its reasoning for the selected sentence, including the upward departure.

B. Substantive Challenges

Nelson argues that the sentence is substantively unreasonable because (1) it was based on an impermissible Guidelines calculation and (2) the court gave unreasonable weight to certain § 3553(a) factors. While the procedural error review is abuse-of-discretion *per se,* the substantive review is "far more ambiguous-it is an error so serious that the decision is not entitled to deference, just as if the court had relied on a clearly erroneous finding of fact, clearly misapplied the law or applied the wrong law." *United States v. Funk,* 534 F.3d 522, 526 (6th Cir.2008) (citing *Lineback,* 330 F.3d at 443). The reviewing court must also be sure to grant the appropriate level of deference to the district court's decision. If it is an atypical case, outside the Guidelines "heartland" of cases, the district court's decision is entitled to the "greatest respect." *Id.* If it is a "mine-run case," however, it warrants a closer review. *Id.* (citing *Kimbrough v. United States,* 552 U.S. ----, 128 S.Ct. 558, 575, 169 L.Ed.2d 481 (2007)). " *Gall* made clear that even a significant departure could be warranted so long as the sentencing court, '[a]fter settling on the appropriate sentence, . . . adequately explain[s] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.' " *Erpenbeck,* 532 F.3d at 438 (quoting *Gall,* 128 S.Ct. at 597).

Nelson asserts that his sentence is substantively unreasonable because

21

the district court improperly relied on a Guidelines departure pursuant to § 5K2.14. "The Guidelines policy statement on departures, however, makes clear that departures are discretionary and a sentencing court 'may impose a sentence outside the range established by the applicable' Guidelines when there are circumstances of a kind or degree that are 'not adequately taken into consideration' under the Guidelines." *Erpenbeck,* 532 F.3d at 439 (quoting U.S.S.G. § 5K2.0).

We conclude that the district court's application of § 5K2.14 was not substantively unreasonable. As discussed *supra* this section allows departure when "national security, public health, or safety was significantly endangered." The district court's discussion details why it found these requirements were met and the district court carefully explained the grounds for applying the enhancement. Giving due deference to the district court's reasoned decision, we cannot say that this application was an abuse of discretion.

Nelson also argues that the district court gave "unreasonable" weight to certain § 3553(a) factors. We find that the court carefully balanced the factors and did not abuse its discretion in doing so. From the district court's detailed discussion of the facts specific to this case, we find it clear that the district court considered all the concerns embodied in § 3553 and simply determined that the departure pursuant to § 5K2.14 was appropriate.

Additionally, Nelson argues that the sentence is unreasonable because the court did not give adequate consideration to the factor listed in § 3553(a)(6)-disparity in sentences among defendants convicted of similar crimes. First, Nelson argues that his sentence is unreasonable because one of his co-defendants, Cook, who was in front of a different district judge, received a lower sentence. " 'Subsection 3553(a)(6) is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct.' This factor is designed to 'ensure nationally uniform sentences among like offenders.' " *United States v. Houston,* 529 F.3d 743 (6th Cir.2008) (quoting *United States v. Simmons,* 501 F.3d 620, 626 (6th Cir.2007) (internal citations omitted)). While this factor is concerned with national disparities, it is not inappropriate for the sentencing court to consider disparities between the sentences of co-defendants as the district court considered in this case.

Nelson argues that the district court was given inaccurate information

22

about Cook's sentence and, that, if the district court had accurate information, it might have altered its ruling. We find that the district court did not have inaccurate information before it. At the second sentencing hearing, the district court discussed the chance that Cook would receive a lesser sentence. The district court was informed that Cook was "potentially looking at a maximum of 36 months." JA 91. This was represented as the *maximum* that Cook would receive, not a minimum or a definite sentence. The district court reasoned that Cook receiving a lesser sentence would not create an unwarranted disparity because Cook merited a downward departure for providing substantial assistance in the investigation and prosecution of others, Nelson received more profit from the transactions and Nelson, as a police officer, had specialized knowledge of firearms and the laws governing them. We find that the district court considered the disparity factor.

In his reply brief Nelson, for the first time on appeal, argues that the sentencing court failed to consider the disparity between his sentence and other defendants across the nation. An appeals court will generally not hear issues raised for the first time in a reply brief. *United States v. Crozier,* 259 F.3d 503, 517 (6th Cir.2001). This Circuit has been clear that an appellant cannot raise new issues in a reply brief and can only respond to arguments made the first time in the appellee's brief. Nonetheless, we find that the district court "correctly calculated and carefully reviewed the Guidelines range" thereby giving "significant weight and consideration to the need to avoid unwarranted disparities." *Gall,* 128 S.Ct. at 599. Giving appropriate deference to the district court's determination, we cannot say that the district court failed to consider any potential national disparity.

*United States v. Nelson*, 296 Fed. Appx. at 477- 482.  Defense counsel argued that the District Court

should give petitioner a reduction in his recommended sentence for his acceptance of responsibility:

[S]ince I got involved in this case and explained the ramifications. . . . [Petitioner] has worked towards resolving this.  He did the bill.  He did not take this to trial.  He did not contest this.  He did not do nothing, Your Honor.  He tried to cooperate with the government.  He met five to six times, proffers and things of that nature, and has recently tried to help trace these weapons.  It's not as though he did nothing and he stood back and said, no, I am not going to do anything to help.

23

> . . . [H]e did try to help. . . he did try to cooperate, and he did try to take responsibility for this in terms of his family members and situations.
>
> It doesn't seem to make sense. . . that he should get the maximum, statutory maximum, for trying to help and trying to cooperate versus someone who does nothing and who goes to trial and who doesn't help in any way, shape or form afterwards to help trace any of these weapons or cooperate.

*Sentencing Transcript*, at 20-21.  Defense counsel further argued that imposition of the statutory maximum would be unfair in view of lower sentences imposed on other defendants who had committed similar crimes and particularly that of the co-defendant who was, at least, equally culpable:

> [T]his never could have happened without the participation of Mr. Cook.  Mr. Cook is potentially looking at the most 36 months, Your Honor.

*Id*. at 22.

> Nothing could have happened in this situation without Robert Cook, a licensed certified person of public trust trying to falsify forms and helping Mark and his family to do that.  Robert Cook and Mark Nelson deceived his family members, and they together put these guns into the stream of both regulated guns and unregulated guns.
>
> So the disparity between potentially ten years versus for Mark Nelson versus three years for Robert Cook, it just doesn't seem to make sense. . . .

*Id*. at 22.  The fact that the District Court rejected defense counsel's arguments and imposed a maximum term of incarceration does not establish that counsel performed in a constitutionally ineffective manner.

Petitioner complains that his attorney improperly advised him to agree to a four level increase in his recommended sentence under U.S.S.G. § 2K2.1(b)(5) for possessing and transferring

firearms with reason to believe they would be used and possessed in connection with another felony offense, and a four level increase under U.S.S.G. § 3B1.1(a) for being an organizer or leader of a criminal activity involving five or more participants or that was otherwise extensive.  According to petitioner, the facts failed to support these sentencing enhancements.

Defense counsel, however, objected to any increase in Nelson's recommended sentence under § 2K2.1(b)(5), despite the terms of petitioner's guilty plea agreement, *see Objections to PreSentence Investigation Report; Sentencing Transcript,* arguing that Nelson had no actual knowledge that any of the firearms he sold would subsequently be used for criminal purposes.  The prosecutor argue that the terms of petitioner's guilty plea precluded such argument.  The District Court overruled defense counsel's objection:

> The precise statement upon which this enhancement is recommended by the probation officer comes from a confidential informant discussing purchasing an assault rifle from the defendant for his guys, and the quote is, who was a dope boy.  The inference the probation officer draws from that is the defendant should have known that the gun would be used by someone in the drug trade.
>
> If the issue were whether he had knowledge or intent, it would be a close call.  But the language also says, reason to believe that the gun would be used or possessed in connection with another felony offense.
>
> Any use of a firearm in connection with a drug transaction is, of course, another felony offense.  And given the statement un-refuted by the confidential informant, that he was buying a gun for a dope boy, I find that sufficient to result in the four-level enhancement.  So I am going to overrule the objection.

*Sentencing Transcript*, at 6.[3]  Petitioner therefore cannot establish the ineffective assistance of

---

[3]  The prosecutor argued that, because Petitioner wore a ballistic vest and had two loaded weapons in the car at the time of his arrest, Petitioner knew "he wasn't dealing with the normal clientele, rather potentially the criminal element."  *Sentencing Transcript*, at 5.

counsel on this basis.

Petitioner similarly complains that his attorney advised him to agree to the four level increase for being a leader or organizer under § 3B1.1(a) when without the participation of co-defendant Cook, he could not have committed any of the offenses charged. This claim is not persuasive. As noted in the Presentence Investigation Report,

> [T]he defendant directed Phaedra Nelson, Ricky Nelson and James Crook to fill out ATF Form 4473's on numerous occasions. The defendant also instructed Abdourahmane Camara to fill out ATF forms on two separate occasions. By the completion of these forms, he was able to obtain firearms which he sold at gun shows and to various individuals outside of the gun shows. . .. Based on the number of firearms obtain and sold or possessed by the defendant, the offense was very extensive. Additionally, the defendant instructed the CI, who informed him that he had a prior felony record, how to obtain a firearm.

*PreSentence Investigation Report*, at ¶87. As noted at sentencing:

> Mr. Nelson is the one who financially gained in this case, diverting those guns from the federal tracking system. Mr. Cook profited very little. It was Defendant Nelson, not Defendant Cook, who trafficked the firearms to the criminal element, the one who actually dealt them. And Cook was a conduit to divert the guns out of the federal tracking system, but it was Mr. Nelson who put them in their hands. And while Cook was an FFL dealer, there is no evidence that he know of those end uses of the guns.

*Sentencing Transcript*, at 26. Under these facts, petitioner plainly qualified for the sentencing enhancement on this basis and he has failed to establish the ineffective assistance of counsel based on his attorney's failure to object to, or advise to agree to this term of the guilty plea agreement.

In related claims five and six petitioner asserts that the District Court improperly enhanced his recommended sentence under the United States Sentencing Guidelines. This claim has already

26

been considered, and rejected by the United States Court of Appeals for the Sixth Circuit and therefore will not now again be addressed here.  See *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)("A § 2255 petition may not be used to relitigate an issue that was raised on appeal absent highly extraordinary circumstances.")

### CLAIM TWO

In claim two, petitioner asserts that the evidence was constitutionally insufficient to sustain his conviction.  This claim should have been raised on direct appeal, but was not.  Moreover, the claim of insufficiency of the evidence is not properly addressed in § 2255 proceedings.  *Kendricks v. United States,* 2007 WL 308929 (E.D.Tenn. Jan.26, 2007)(citations omitted). Therefore, petitioner must establish cause and actual prejudice from the alleged error or that he is actually innocent of the offense for consideration of his claims in these proceedings.  *Id.*, citing *Bousley v. United States,* 523 U.S. at 619; *United States v. Frady,* 456 U.S. 152 (1982).  Petitioner cannot meet this standard here.

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp,* 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

A. Were the omitted issues "significant and obvious?"

27

B. Was there arguably contrary authority on the omitted issues?

C. Were the omitted issues clearly stronger than those presented?

D. Were the omitted issues objected to at trial?

E. Were the trial court's rulings subject to deference on appeal?

F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

G. What was appellate counsel's level of experience and expertise?
H. Did the petitioner and appellate counsel meet and go over possible issues?

I. Is there evidence that counsel reviewed all the facts?

J. Were the omitted issues dealt with in other assignments of error?

K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427-28 (6th Cir.1999). The Sixth Circuit cautioned, however, that

this list is not exhaustive and need not produce a certain "score." *Id.* at 428.

Petitioner waived his right to challenge the sufficiency of the evidence against him by entry

of his guilty plea.

> [C]laims about the deprivation of constitutional rights that occurred before [a] guilty plea . . . are foreclosed by [the] guilty plea. *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Simply stated, "[a] voluntary and *734 unconditional guilty plea waives all nonjurisdictional defects in the proceedings." *United States v. Ormsby,* 252 F.3d 844, 848 (6th Cir.2001).

*Siebert v. Jackson,* 205 F.Supp.2d 727, 733-34 (E.D. Michigan February 13, 2002). Moreover, the

Constitution does not require a trial court to inquire into the factual basis for the guilty plea. *Roddy

v. Black,* 516 F.2d 1380, 1385.  Additionally, as discussed, *supra*, the record reflects overwhelming

28

evidence of guilt.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.


s/Mark R. Abel_____
United States Magistrate Judge